<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TODD F. PERKOWSKI, | : | **Civil Action No. 19-14736 (SRC)** |
| Plaintiff, | : |  |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
| Defendant. | : |  |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff Todd F. Perkowski ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning November 20, 2014. A hearing was held before ALJ Ricardy Damille (the "ALJ") on April 6, 2018, and the ALJ issued an unfavorable decision on October 1, 2018. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of October 1, 2018, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work, with certain limitations. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform any of his past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on three grounds: 1) the ALJ's decision is contrary to Third Circuit law; 2) at step four, the ALJ's determination that Plaintiff retains the residual functional capacity to perform frequent handling, fingering and feeling is not supported by substantial evidence; and 3) the absence of a limitation to the ability to interact with others in the residual functional capacity determination is not supported by substantial evidence.

Plaintiff first argues that the ALJ's decision is contrary to the Third Circuit's decision in Boone v. Barnhart, 353 F.3d 203, 210 (3d Cir. 2003). In short, at step four, the ALJ found that Plaintiff needed a job with a sit/stand option. At step five, the vocational expert testified that Plaintiff could perform three jobs that would be available with a sit/stand option. Plaintiff is correct that the Boone Court held as follows:

> SSR 83-12 makes clear that if a person "must alternate periods of sitting and standing," as Boone must have the option to do, she "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a

2

> seated position) or the prolonged standing or walking contemplated for most light work." *Id.* Thus, the requirement, found by the ALJ, that Boone's employment allow her the option to sit or stand at will every thirty minutes precludes her from performing "the prolonged sitting contemplated in the definition of sedentary work" as well as "most light work."

353 F.3d at 210. The Commissioner responds that Plaintiff has misinterpreted Boone and, in support, points to two non-precedential cases, Martin v. Barnhart, 240 Fed. Appx. 941, 946 (3d Cir. 2007) ("SSR 83-12 does not automatically dictate a finding of disability where an individual is limited by a sit/stand option. Rather, SSR 83-12 indicates that a VE should be consulted, and here, one was"); and Henderson v. SSA, 87 Fed. Appx. 248, 252 (3d Cir. 2004) (VE testimony about sit/stand option is substantial evidence, even in light of SSR 83-12.)

The Commissioner is correct. The holding in Boone quoted above must be understood in the context of the rest of that decision. As the Commissioner argues, the Boone Court did not hold categorically that a claimant who needs a sit/stand option can never perform sedentary work. Rather, the Boone Court first rejected the vocational expert's testimony and *then* concluded that the step five determination was not supported by substantial evidence, in light of SSR 83-12. In the instant case, the vocational expert testified that three jobs would be available with a sit/stand option. (Tr. 44.) That constitutes substantial evidence to support the determination at step five; there is no error under Boone. Martin, even though non-precedential, confirms that the Commissioner has correctly understood Boone.

Plaintiff next argues that, at step four, the ALJ's determination that Plaintiff retains the residual functional capacity to perform frequent handling, fingering and feeling is not supported by substantial evidence. Plaintiff first contends that the evidence of greater limitation is "undisputed." (Pl.'s Br. 11.) Later on that same page, however, Plaintiff has changed this to

3

saying that Plaintiff's testimony is undisputed and supported by the opinions of his treating physicians. (Id.) Plaintiff's brief fails to recognize, much less engage with, what the ALJ actually wrote:

> In January 2016, the claimant was referred for an MRI of the cervical spine based on repotis to his pain management specialist of cervicalgia; this scan revealed right-sided disc herniations at the C4-Tl levels with some indication of foraminal narrowing (Ex. 14F). This in fact seemed to correlate with symptoms the claimant began to repot1 to his pain management service in approximately July 2016 (Ex. 11F, 13F): the claimant reported neck and right arm symptoms, and exhibited neck tenderness and right arm pain with mild loss of right arm strength ( 4/5) and reduced grip strength in the right hand (3/5); the left arm exhibited normal strength, and again the lumbar spine exam remained consistent with the original 2015 exam. The claimant also received injection treatment for the cervical spine, and he reported some improvement in pain symptoms. Nonetheless, he continued to see his pain management specialist for cervical spine and lumbar spine pain through February 2018, and his clinical examination notes remained consistent (in fact, identical) during every examination in 2017 and 2018 (Ex. 9F, 12F); the claimant reportedly exhibited an antalgic gait, tenderness/spasm in the lumbar and cervical spines (with positive straight leg raising), and full strength/sensation in all extremities except the right upper extremity (which exhibited 3/5 grip strength and 4/5 global strength). The claimant does not appear to have undergone physical therapy or to have been considered for surgery or more intensive treatment.
>
> The claimant in November 2016 was also referred to a rheumatology specialist after reporting recent swelling and cramping in the hands/wrists (Ex. 10F); on exam at that time, he was noted to exhibit some puffiness about the MCP joints in both hands (lumbar tenderness was also noted). Medication was adjusted and this appeared to improve psoriatic arthritis symptoms; during his next exam in February 2017, the claimant exhibited no signs of synovitis or swelling in any joints (though lumbar tenderness was apparent, Ex. 10F). He did exhibit mild tenderness and swelling in the hands in May 2017 (medication was adjusted), but in June 2017 he exhibited normal hand/wrist and shoulder joints despite tenderness in the cervical and lumbar spines (Ex. 10F). He reported right shoulder pain (in addition to lumbar/cervical spine pain) in November 2017, but he was also noted to exhibit good grip strength with both hands (Ex. 10F). It appears, in short, that the claimant experienced some occasional flare ups in his psoriatic arthritis (usually with symptoms consisting only of mild swelling and some skin symptoms), but that he responded to specialist treatment and experienced no serious, persistent problems with using the hands or otherwise functioning physically as the result of this inflammatory disease (his biggest difficulties

4

> appear to have been related to his spine disease). These rheumatology records also give no indication that the claimant exhibited "constitutional" symptoms of inflammatory disease such as chronic fatigue, malaise, fever or weight loss. The claimant did undergo an independent physical exam in December 2015, performed by Dyana Aldea, M.D. (Ex. 5F): the claimant reported his severe pain symptoms and ongoing joint issues, but exhibited few of the clinical deficits observed in his pain management records; his gait was normal; strength was full in all extremities except in the left leg ( 4+/5 strength) with no neurological deficits; straight-leg raising was normal and grip and dexterity were intact in both hands.
>
> . . .
>
> As noted previously, the claimant in his testimony reported experiencing very serious problems with sustained physical tasks ( even sitting for standing for a few minutes before needing to change position), significant lifting and use of the hands; he suggested he would not be capable of performing any fulltime work due to these symptoms. His pain management records make plain that he consistently exhibited an antalgic gait and some mild loss of grip and strength in the right hand/arm at least, with ongoing tenderness and pain affecting the low back and neck region. Still, these records likewise note that the claimant was never considered for surgery, and that he did report significant improvement following his numerous injection treatments in the neck and low back; while his symptoms clearly persisted to a degree, this does strongly suggest that the claimant even despite occasional flares in psoriatic arthritis (which also responded to treatment) retained some significant physical capability despite his symptoms. Indeed, the claimant over these years never exhibited atrophy in the muscles or required an assistive device; this suggests he was able to walk, if only over short distances, on a regular basis and to engage in normal if not strenuous activity. His hands may have at times exhibited active symptoms (particularly on the right), but the claimant was nonetheless able to perform some part-time work as a cook (though he was required to sit regularly when performing this work); otherwise he was able to groom himself, perform light household tasks independently, care for grandchildren, repair/use computers, and engage in other light activity which involved significant use of the hands. Indeed, the claimant in general remained capable of performing a fairly normal range of simple daily tasks of a non-strenuous variety throughout the period under consideration.

(Tr. 28-29.)   Plaintiff has offered no support for his assertion that the evidence of greater limitations in the use of his hands was undisputed.   The ALJ discussed the issue extensively, considered a wide array of contrary evidence, and explained his reasoning in detail.   The

5

limitation to frequent handling, fingering and feeling, in the residual functional capacity determination, is supported by substantial evidence.

Last, Plaintiff argues that the ALJ's residual functional capacity determination fails to include certain nonexertional limitations. Plaintiff contends that the determination does not reflect the evidence that Plaintiff's ability to interact with others is limited. Again, Plaintiff's brief fails to recognize or engage with what the ALJ actually wrote:

> In interacting with others, the claimant has a mild limitation. The claimant did not specifically allege any significant problems getting along with others generally; in his function report (Ex. 5E) he reported no social problems or any significant mental problems in general. He is clearly capable of leaving his home and behaving appropriately in public. He was cooperative and appropriate with treating sources. He was irritable and disheveled during the independent mental exam (Ex. 3F), but this was clearly due to his disregard for being required to attend the examination. Otherwise, he exhibited no problems in general interacting with others appropriately. He experienced no significant limitations in this area overall.

(Tr. 25.) The ALJ assessed Plaintiff's ability to interact with others and found only a mild limitation. Plaintiff's brief cited no contrary evidence. Plaintiff has failed to persuade this Court that the ALJ's omission of a limitation in his ability to interact with others at step four is not supported by substantial evidence.

Plaintiff has failed to persuade this Court that the ALJ erred in his decision, or that he was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                    s/ Stanley R. Chesler
                                                    STANLEY R. CHESLER, U.S.D.J.

Dated: June 5, 2020